(No. 29757.—

PAUL A. PORTER, Price Administrator, Appellee, *vs.*
BEATRICE ALEXENBURG *et al.,* Appellants.

*Opinion filed January 22, 1947.*

EDGAR A. JONAS, and FREDERICK C. JONAS, both of Chicago, for appellants.

AMOS J. COFFMAN, GEORGE E. LEONARD, ISADORE L. KOVITZ, and JACOB COHEN, all of Chicago, for appellee.

Mr. CHIEF JUSTICE GUNN delivered the opinion of the court:

Certain proceedings were brought by the Administrator of the Office of Price Administration, for and on behalf of the United States, against Beatrice Alexenburg, Max Alexenburg, and Albert Alexenburg, individually and as copartners, which resulted in a suspension of their business of operating a meat market, and enjoining them from violation of the Emergency Price Control Act of 1942. (50 U.S.C.A., 901-925.) After the issuance of the injunction a petition and affidavit were filed charging the defendants with violating the injunction and seeking to have them

adjudged in contempt, and punished accordingly. The causes were consolidated, and upon a hearing in the circuit court of Cook county the defendants' license was suspended for sixty days, and each of the defendants adjudged guilty of contempt, and Beatrice Alexenburg and Albert Alexenburg fined $200 each, and defendant Max Alexenburg sentenced to the county jail for a period of sixty days. The cause was appealed to the Appellate Court, where the judgment of the circuit court was affirmed. We have allowed an appeal to this court.

The original action in the circuit court was authorized under section 925(a) of the Emergency Price Control Act, which provides the Administrator may make application to an appropriate court for an order enjoining such acts or practices, etc. Under section 925(f) such Administrator has authority to petition any State or Territorial court of competent jurisdiction for orders suspending licenses. We have held the Emergency Price Control Act is an act of a public nature, and therefore a part of the general laws of the State of Illinois. *Regan* v. *Kroger Grocery & Baking Co.* 386 Ill. 284.

The first proceeding was commenced in September, 1944, and an injunction issued restraining the defendants from violating ceiling prices upon meat. These prices were established pursuant to regulations promulgated by plaintiff under authority of the act. After a warning, the second proceeding was started in March, 1945, seeking suspension of the defendants' license. The same violations used as a basis for the suspension order were made the ground of a petition for rule to show cause why the defendants should not be held in contempt for the violation of the injunction issued in the original proceeding, and, after a hearing, the defendants were found guilty and punished as set out above.

There are two main questions in the case: (1) what is the character of a contempt, civil or criminal; and (2)

under the provisions of the Federal law can the United States, through its Price Administrator, apply for a contempt citation, whether the contempt alleged be civil or criminal?

Quoting from *Wilson* v. *Prochnow,* 359 Ill. 148, in the case of *People ex rel. North American Investment and Loan Ass'n* v. *Kitzer,* 389 Ill. 54, in passing upon the question whether a proceeding involving a contempt should be reviewed by writ of error or by appeal, we said: "Contempts have been classified as criminal contempts and civil contempts. The former includes acts in disrespect of the court or its process and those tending to bring the court into disrepute or obstruct the administration of justice. Civil contempts have been characterized as quasi-contempts, and consist in failing to do something which the contemner is ordered by the court to do for the benefit or advantage of another party to the proceeding before the court."

This distinction does not determine the precise question raised in this case. The subject of whether violation of an injunction issued in a chancery proceeding is a civil or criminal contempt is exhaustively treated in *Hake* v. *People,* 230 Ill. 174. After reviewing a great many cases from the earliest times, and most of the previous Illinois decisions, the court reached the conclusion that the violation of an injunction is a civil and not a criminal contempt, the court expressly holding that upon obtaining a proper order of a court commanding or prohibiting certain actions, and a refusal to conform, the proceeding for contempt is for the purpose of advancing the civil remedy of the other party to the suit, and comments: "In this class of cases, while the authority of the court will be incidentally vindicated, its power has been called into exercise for the benefit of a private litigant and not in the public interest, merely." The procedure necessary in civil contempts is then set out by the court in detail. "From the foregoing review of the

authorities in this State the following rules applicable to civil contempts may be deduced: Such proceedings may be commenced by petition or affidavit filed in the court having jurisdiction of the cause wherein the order was entered, the violation of which forms the basis of the contempt proceeding; whether commenced by petition or affidavit, the alleged contempt need not be set out in the petition or affidavit with the same particularity as is required in a criminal information or indictment, the rules in this regard applicable to other chancery pleading will control; it is not necessary to set out in detail the prior orders and proceedings in the cause in which the contempt is committed, since the court will take judicial notice of its own orders and records in the cause; on the hearing of a civil contempt the court is not confined to the evidence afforded by the defendant's sworn answer, but may hear affidavits, or any other proper testimony, to enable the court to determine the truth of the matter according to justice and equity; the cause may be carried on in the name of the original complainant in the chancery case, or in the name of the People on the relation of the complainant; regardless of how the case may be commenced,—that is, whether by affidavit or petition,—and regardless of how the case is docketed,—that is, whether in the name of the complainant or the People of the State of Illinois against the contemnor, —the case is, from its inception to its conclusion, in all of its procedure, essentially a civil chancery proceeding, conforming itself, in its pleadings, character and quantity of proof required, and in its course through the appellate tribunals, to the rules and practice applicable to other chancery proceedings." This case has been followed many times, and it is undoubtedly the law of this State, that the violation of a prohibitive injunction constitutes a civil contempt. *Loven* v. *People ex rel. Fahrney & Sons Co.* 158 Ill. 159; *Flannery* v. *People,* 225 Ill. 62; *Hake* v. *People,*

230 Ill. 174; *Kneisel* v. *Ursus Motor Co.* 323 Ill. 452; *Wilson* v. *Prochnow,* 359 Ill. 148.

It is, however, contended by appellants that because the United States is a party it necessarily cannot be a civil contempt because it is public in nature. It is to be observed section 925 of the Emergency Price Control Act provides two classes of remedies. The United States, through its Price Administrator, may proceed in a civil proceeding for an injunction (sec. 935(a);) it may proceed in a Territorial or State court in addition to the United States courts (925(f);) it may proceed criminally against the offender, but then only in the United States district courts (925(c).) It appears from this the United States may have both a civil and criminal remedy.

The contention of appellants, however, has been settled beyond doubt by the case of *McCrone* v. *United States of America,* 307 U. S. 61, 83 L. ed. 1108. In that case a party had been committed for contempt for failure to obey an order of the district court in a proceeding to compel the contemnor to testify in a tax inquiry. The court held that the presence of the United States as a party plaintiff did not operate to prevent the proceeding from being one for a civil contempt. The court says: "Petitioner insists that no civil action was involved here and that proceedings to which the United States and its agents are parties cannot be civil. However, article 3, section 2, of the constitution, expressly contemplates the United States as a party to civil proceedings by extending the jurisdiction of the Federal judiciary 'to Controversies to which the United States shall be a Party.' An action by the Interstate Commerce Commission to compel a witness to testify is 'a direct civil proceeding, expressly authorized by an act of Congress, in the name of the Commission, and under the direction of the Attorney General of the United States, against the witness.'"

In the present case, the Emergency Price Control Act specifically provides that the United States may proceed in a civil proceeding against a violator of the provisions of the act, and consequently the mere fact that the United States is the petitioner does not brand the proceeding as a criminal in the place of a civil contempt. Great reliance is placed upon the case of *Federal Trade Com.* v. *A. Mc-Lean & Son,* 94 Fed. 2d 802, Seventh Circuit, in which the Court of Appeals reached a different conclusion. The appeal in the *McCrone case* was allowed because of the conflict of the *McLean case* with the *McCrone case* in the Court of Appeals for the Second Circuit. (100 Fed. 2d 323.) Since the Supreme Court held there was a conflict in these cases, and sustained the decision in the Second Circuit, the argument of counsel that there is a distinction between the cases is not tenable.

While the foregoing are the principal objections taken to the decision of the circuit and Appellate courts, they raise a further objection that the order does not provide with sufficient certainty to whom the fine shall be paid, or where the defendant Max Alexenburg shall be confined. There is a difference in the requirements of an order fixing punishment for a civil contempt from that for a criminal contempt. Where the contempt is criminal, the order must recite the presence of the defendant and all of the facts necessary to constitute a criminal contempt. However, in a civil contempt the presence of the defendant is not necessary to authorize the court to enter an order of committal. *Barclay* v. *Barclay,* 184 Ill. 471.

The reason for the difference in the requirements of an order for criminal contempt and that for such an order in a civil contempt is that in the former the only matter of record showing the nature of and facts that constitute the contempt is contained in the order, since there is no pleading; while in the case of a civil contempt the pro-

ceeding is initiated by an affidavit or petition showing the matter which gives the court ground for imposing the penalty. Thus, the petition and order, or rule to show cause, when made into a record, show all that is necessary in the way of facts, and thus may be properly reviewed upon a record which discloses what occurred. 12 Am. Jur. 444.

In the present case the petition set up the matter in detail, and evidence was taken, and from this the order of the court recites, *viz.*, upon the petition and the evidence taken, that it finds the defendants guilty of contempt and fixes their punishment as disclosed above. The authorities cited by appellants as bearing upon the contents of the order are all cases of criminal contempt. The record in the present case shows the grounds upon which defendants were punished, and that is sufficient in cases of civil contempt.

It is contended that the order committing Max Alexenburg to jail is defective in that it does not conclude with the words "or until discharged according to law." We fail to understand why an order committing the defendant for sixty days is not definite without these words, as the addition of these words would not make the order more certain.

It is also complained the order with respect to the other defendants is defective in that it does not say to whom the fine shall be paid. The statute provides where fines are to be paid, and it is not necessary to set it out specifically in the order, especially in those particular cases where the law makes a specific provision for the disposition of the fine. Where the statute makes no provision for the place where the fine shall be paid it goes into the county school fund. Ill. Rev. Stat. 1945, chap. 122, par. 18-20.

The claim is also made the punishment is excessive and the suspension of the license unreasonable. Those are matters which could have been determined upon an appeal

from such action of the court. The proceeding here is collateral to the original proceeding, and we would have no jurisdiction or authority to amend or change in any respect the order therein.

We find no error in the proceedings of the Appellate Court, and its judgment is accordingly affirmed.

*Judgment affirmed.*