COLUMBIA QUARRY COMPANY, Plaintiff-Appellee, v. THE DEPART-
MENT OF REVENUE, Defendant-Appellant.

Fifth District   No. 5—86—0105

Opinion filed April 13, 1987.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones
Stewart, Solicitor General, and William D. Frazier, Assistant Attorney Gen-
eral, of Chicago, of counsel), for appellant.

William L. Kasley and Mary Ellyn R. Hogan, both of Peoria, for appel-
lee.

PRESIDING JUSTICE KARNS delivered the opinion of the court:
The Department of Revenue of the State of Illinois (the Depart-
ment) appeals from an order of the circuit court of Monroe County re-
versing its denial of credit claims in the amount of $44,364.08 for re-
tailers' occupation tax paid by Columbia Quarry Company (plaintiff)
with respect to eight separate sales of limestone. The circuit court re-
versed the rulings of the Department on the basis that the sale of the
limestone was exempt from taxation pursuant to section 1a of "An Act
in relation to a tax upon persons engaged in the business of selling
tangible personal property to purchasers for use or consumption" (Ill.

Rev. Stat. 1983, ch. 120, par. 440a) (hereinafter Retailers' Occupation Tax Act) as part of a system and method used for the purpose of reducing air pollution. We affirm.

Between August 1980 and February 1983, plaintiff made eight separate sales of limestone to Central Illinois Light Company (CILCO) for use in its Duck Creek pollution control facility. Plaintiff collected $44,364.08 in use tax from CILCO and paid $44,364.08 in retailers' occupation tax to the Department. Plaintiff issued CILCO an unconditional promissory demand note for the amount of use tax collected and then filed claims for credit with the Department. The Department denied the claims. Plaintiff filed a protest and requested an administrative hearing. The hearing referee also recommended that plaintiff's claims for credit not be allowed. The referee found that the limestone used in the Duck Creek operation was a chemical, and on the basis of Rule 130.335 of the Illinois Administrative Code, which denies tax exempt status to chemicals used in the operation of pollution control equipment, concluded the limestone did not qualify as a pollution control facility within the purview of section 1a of the Retailers' Occupation Tax Act. In accordance with the recommendation of the hearing referee, the Department issued a final determination denying plaintiff's claims for credit. Plaintiff, in turn, sought administrative review of the Department's final determination. The circuit court concluded the limestone was part of a system and method used for the purpose of reducing air pollution and was therefore tax exempt. In its order reversing the Department's rulings, the court further stated Rule 130.335 was a restrictive interpretation of section 1a that was both erroneous and arbitrary.

The Department argues on appeal the limestone in question is merely a chemical additive to CILCO's pollution control facility and as such does not qualify for exemption pursuant to section 1a of the Retailers' Occupation Tax Act as a "system, method, construction, device or appliance appurtenant thereto" utilized for the primary purpose of reducing air pollution.

Section 1a of the Retailers' Occupation Tax Act, which exempts pollution control facilities from the retailers' occupation tax, defines pollution control facilities as:

"any system, method, construction, device or appliance appurtenant thereto sold or used or intended for the primary purpose of eliminating, preventing, or reducing air and water pollution *** or for the primary purpose of treating, pretreating, modifying or disposing of any potential solid, liquid or gaseous pollutant which if released without such treatment, pretreatment, modifi-

cation or disposal might be harmful, detrimental or offensive to human, plant or animal life, or to property." (Ill. Rev. Stat. 1983, ch. 120, par. 440a.)

The Department has further refined this definition by promulgating Rule 130.335 of the Illinois Administrative Code which states in part:

"This exemption includes not only the pollution control equipment itself, but also replacement parts therefor, but does not extend to chemicals used in any such equipment, to fuel used in operating any such equipment, nor to any other tangible personal property which may be used in some way in connection with such equipment, but which is not made a physical component part of the equipment itself." (86 Ill. Admin. Code 130.335 (1985).)

The issue before us then is whether CILCO's use of the limestone falls within the purview of Rule 130.335, and if so, whether Rule 130.335 is a proper interpretation of section 1a. We begin by analyzing the use and function of limestone in the Duck Creek operation.

The limestone purchased by CILCO from plaintiff was utilized by CILCO exclusively in the limestone scrubbers at its Duck Creek power generating facility. The scrubber equipment, which has been certified by the Illinois Environmental Protection Agency as a pollution control facility, removes sulfur dioxide, a pollutant, from the flue gas at the plant. The system essentially consists of two parts: the limestone grinding and handling facility and the "box" where the limestone reacts with the flue gas to remove the sulfur dioxide. The limestone is first dumped into a feed box where it is ground to a fine powder and mixed with water before reaching a storage tank. It then becomes the main feed stock for the scrubber system. The scrubber itself can be characterized as a "black box." Flue gas enters from one end of the box and the limestone slurry (ground limestone mixed with water) enters from the other. The two are mixed, whereupon the sulfur dioxide combines with the calcium carbonate in the limestone and falls out as a waste material in the form of calcium sulfate. The clean flue gas is then released into the atmosphere.

■ The Department characterizes the limestone as a chemical additive because of the chemical reaction that occurs between the calcium carbonate in the limestone and the sulfur dioxide in the flue gas. Based on its rule, the Department argues the limestone is not tax exempt. Limestone's involvement in a chemical reaction, however, is not indicative of its being a chemical additive. Limestone is a sedimentary rock formed chiefly by the accumulation of organic remains. (See Webster's Third New International Dictionary 1312 (1971).) It does contain

elements that chemically react with a variety of gases and liquids, but that does not make it a chemical. As quaintly argued by plaintiff, "Every day our body digests the food we have eaten via a chemical reaction. The fact that a chemical reaction occurs within our digestive system is not conclusive evidence that the sandwich we ate for lunch was a chemical." We agree with the trial court that in this context, limestone functions like a filter, absorbing pollutants and preventing them from contaminating the environment. As such, it is part of a system and method used for the purpose of reducing air pollution, and therefore falls within the purview of section 1a.

■■ The Department is authorized to promulgate and enforce reasonable rules and regulations relating to the administration of the retailers' occupation tax. (See *Du-Mont Ventilating Co. v. Department of Revenue* (1978), 73 Ill. 2d 243, 247, 383 N.E.2d 197, 200.) These rules and regulations are entitled to some respect as administrative interpretations of the Act, but they are not binding on the court and, more importantly, cannot be allowed to limit or extend its scope. (See 73 Ill. 2d 243, 247-48, 383 N.E.2d 197, 200; *American Welding Supply Co. v. Department of Revenue* (1982), 106 Ill. App. 3d 93, 103, 435 N.E.2d 761, 769. See also *Winnetkans Interested in Protecting the Environment (WIPE) v. Pollution Control Board* (1977), 55 Ill. App. 3d 475, 479-80, 370 N.E.2d 1176, 1179.) As we noted in *American Welding Supply Co. v. Department of Revenue* (1982), 106 Ill. App. 3d 93, 435 N.E.2d 761, the language of section 1a is extremely broad. (106 Ill. App. 3d 93, 103, 435 N.E.2d 761, 769.) We should therefore interpret the terminology as such. See also *Ceen v. Checker Taxi Co.* (1976), 42 Ill. App. 3d 93, 96-97, 355 N.E.2d 628, 630.

The statute specifically exempts systems or methods whose primary purpose is the elimination of air pollution. The scrubber's primary purpose is the elimination of air pollution. Limestone is a necessary and integral part of that system or method. Without limestone, the scrubber simply would not operate to reduce air pollution. The Department's interpretation of section 1a, represented by Rule 130.335, is unduly restrictive in this instance. The language of section 1a includes a wide variety of pollution control methods and systems and is not limited simply to mechanical processes. (*Cf.* Ill. Rev. Stat. 1983, ch. 120, par. 440a—1.) Neither does the statute limit exemption to only those items which become a physical or permanent component part of the equipment itself. (See *American Welding Supply Co. v. Department of Revenue* (1982), 106 Ill. App. 3d 93, 103, 435 N.E.2d 761, 769. See also *Du-Mont Ventilating Co. v. Department of Revenue* (1978), 73 Ill. 2d 243, 248, 383 N.E.2d 197, 200.) The legislature intended to en-

courage diverse means for reducing pollution through the use of tax exemptions; we should not allow the Department to discriminate against the use of natural materials for pollution control, especially when used as a filtering media. As noted by the trial court, a metal electronic filter affixed to a scrubber which requires replacement as often as the limestone needs to be replenished here would be exempt. Both have the same function and purpose: to reduce air pollution. We see no reason to exempt one, while not the other. *Cf. In re Mi-Jack Products, Inc.* (1985), 136 Ill. App. 3d 721, 726, 483 N.E.2d 920, 924 (transporting versus transferring goods for exemption purposes).

Limestone's sole purpose in the Duck Creek operation is pollution control. As part of a system or method to reduce air pollution, we find that it falls within the purview of section 1a and is therefore exempt from the retailers' occupation tax.

For the reasons stated above, we affirm the order of the circuit court of Monroe County reversing the Department's denial of credit claims in the amount of $44,364.08 for the retailers' occupation tax paid by plaintiff with respect to eight separate sales of limestone to CILCO between August 1980 and February 1983 for use in its tax-exempt Duck Creek pollution control facility.

Affirmed.

KASSERMAN and WELCH, JJ., concur.