TAVERN LIQUOR SUPPLY CO., Plaintiff, *v.* ILLINOIS LIQUOR CONTROL COMMISSION *et al.*, Defendants-Appellees.—(MIDWAY WHOLESALERS, INC., *et al.*, Intervening Plaintiffs-Appellants.)

First District (3rd Division) No. 77-150

*Opinion filed December 27, 1978.—Modified on denial of rehearing June 6, 1979.*

Robert L. Graham and Christopher J. McElroy, both of Jenner & Block, of Chicago, for appellants.

William J. Scott, Attorney General, of Chicago (Michael J. Hayes and Gregory Kinczewski, Assistant Attorneys General, of counsel), for appellees.

Miss JUSTICE McGILLICUDDY delivered the opinion of the court: Midway Wholesalers, Inc. (Midway), and Peerless Liquors, Inc. (Peerless), plaintiffs and intervenors in an action initially instituted by the Tavern Liquor Supply Co., appeal from an order of the Circuit Court of Cook County granting the defendants, the Illinois Liquor Control Commission and Thomas J. Murphy, a summary judgment while denying the plaintiffs' motion for such judgment. Tavern is not a party to this action.

On appeal, Midway and Peerless raise three issues for our review: (1) whether article VI, section 7a, of the Liquor Control Act (Ill. Rev. Stat. 1975, ch. 43, par. 126) (hereinafter section 126) requires that, as a precondition to the distribution of liquor in Illinois, duly licensed distributors of alcoholic liquors must enter into franchise agreements with the manufacturers of the liquor they distribute and register those agreements with the commission; (2) whether the trial court impermissibly based its conclusions upon personal opinion rather than the

plain meaning of the statute, and (3) whether the commission is estopped from imposing sanctions upon the plaintiffs for the alleged violations of the statutory provision.

The facts of the dispute involved in this suit are substantially uncontroverted. The plaintiffs are engaged in the business of the wholesale distribution of alcoholic beverages. They are duly licensed by the commission under article V, section 1(b), of the Liquor Control Act (Ill. Rev. Stat. 1975, ch. 43, par. 115(b)), which permits them to undertake "the wholesale purchase and storage of alcoholic liquors and sale of alcoholic liquors" to other licensees. The plaintiffs do not deal directly with liquor manufacturers; they purchase liquor from other licensed wholesale distributors.

Section 126 establishes certain franchise and registration requirements for the sale and distribution of alcoholic beverages and provides, in pertinent part, as follows:

> "Each manufacturer, distributor, importing distributor, or foreign importer who owns or controls the trade mark, brand or name of any alcoholic liquor shall register with the State Commission the name of each person to whom such manufacturer, distributor, importing distributor, or foreign importer grants the right to sell at wholesale in this State any such alcoholic liquor, specifying the particular trade mark, brand or name of alcoholic liquor as to which such right is granted, the geographical area or areas for which such right is granted and the period of time for which such rights are granted to such person. Such manufacturer, distributor, importing distributor, or foreign importer may grant the right to sell at wholesale any trade mark, brand or name of any alcoholic liquor in any geographical area to more than one person. Such registration shall be made on a form prescribed by the State Commission and the State Commission may require such registration to be on a form provided by it. No such registration shall be made by any other person or in any other manner * * *."

Ill. Rev. Stat. 1975, ch. 43, par. 126.

The plaintiffs have not entered into any franchise agreements with the manufacturers who control the trademarks because they purchase no alcoholic liquor from them. They have entered into any franchise agreements with the distributors from whom they purchase alcoholic liquor because these distributors have no ownership or control over the trademarks, brands or names of the products they supply.

Subsequent to a citation issued against it by the defendants, Tavern Liquor filed its complaint in the Circuit Court of Cook County seeking both declaratory and injunctive relief. Tavern asked for a permanent injunction to prevent the defendants from imposing sanctions against it or against any members of the Illinois Wholesale Liquor Dealers for selling

Tavern alcoholic liquor. Tavern also sought a declaratory judgment that section 126 does not require wholesalers registered thereunder, who do not own or control certain defined alcoholic liquors, to register Tavern, and that section 126 does not prohibit wholesalers registered thereunder from selling alcoholic liquors to Tavern, if such sales are made within the geographical area for which the wholesaler has a selling right.

On August 28, 1975, the trial court entered a preliminary injunction against the defendants restraining them from issuing any citations, proceedings or other sanctions for any alleged violation of section 126 against the plaintiff, or any other individual, firm or entity who does not own or control the trademarks, brands or names of alcoholic liquor, on account of sales of said liquor to the plaintiff. The following day, after Midway and Peerless intervened in the cause and filed complaints with substantially the same allegations as the complaint filed by Tavern, a preliminary injunction, identical to the one issued to Tavern, was granted to these plaintiffs-intervenors.

Subsequent to the reassignment of the suit to a new trial judge, both parties filed cross-motions for summary judgment. On January 26, 1977, the trial court entered summary judgment in favor of the defendants, finding:

> "That for the reasons stated of record, the provisions of Ch. 43 Ill. Rev. Stat. §126 and each of them apply to the Plaintiff and the Plaintiff-Intervenors and that the sale and distribution of alcoholic liquors at wholesale by the Plaintiff and the Plaintiff-Intervenors without having obtained a franchise from and being registered by the manufacturer, distributor, importing distributor, or foreign importer who owns or controls the trademark, brand or name of those alcoholic liquors pursuant to §126 of the Illinois Liquor Control Act is a violation of the Act."

In explaining its ruling, the trial court made the following comments:

> "I wanted to make one comment on the record. And that's that I have a philosophy which underlies my decision.
> * * *
> I really believe in my heart that a state should have the right to carefully control its liquor laws because liquor does, in my opinion, affect the public health and safety and morals.
> * * *
> I have construed it [section 126] perhaps more strictly in favor of the State. As I indicated to you, I do not think it is a well-drawn statute."

The first issue raised by the plaintiffs is that the trial court erred in interpreting section 126 as requiring the plaintiffs, who are engaged in the secondary distribution of alcohol, to enter into and register with the

commission franchise agreements with manufacturers, distillers or importers, who own or control the trademark, brand or name of an alcoholic beverage. They contend that the statute requires only that the manufacturers, or distributors who own or control the trademark, brand or name of an alcoholic beverage and who enter into franchise agreements with distributors granting them the right to sell at wholesale any such alcoholic beverage must register those agreements with the commission. The plaintiffs argue that the statute contains no requirement that every distributor must enter into a franchise agreement with the manufacturer, and to consture such an interpretation would be contrary to the clear meaning of the statute.

The defendants, on the other hand, contend that the legislature clearly intended that any person engaged in the wholesale distribution of alcohol must comply with the franchise and registration requirements. They argue that the provision must be read in this manner in order to implement the policies of the Liquor Control Act favoring strict regulation of the distribution and sale of alcohol. The defendants also assert that to construe the provision otherwise would cripple the Commission's ability to comprehensively monitor liquor distribution in Illinois, would destroy the effectiveness of the franchise system and would greatly impede effective revenue collection safeguards..

The primary indicia of the legislative intent embodied in a statutory provision is the plain language of the statute. (*Illinois Bell Telephone Co. v. Powell* (1971), 48 Ill. 2d 375, 270 N.E.2d 25.) The express language of section 126 provides that when a party who owns or controls the trademark, brand or name of an alcoholic beverage grants to another party the right to sell the liquor wholesale, the party owning the trademark must register the agreement with the commission. There is no requirement in this provision that every distributor must enter into a franchise agreement with the manufacturer of the liquor. No other provision of the Act serves to modify the language of this section. While we are mindful of the fact that the Liquor Control Act should be liberally construed so as to protect the health, safety and welfare of the people of this State (Ill. Rev. Stat. 1975, ch. 43, par. 94), we find no reason to alter the express language of section 126.

Although no reviewing court has construed section 126 subsequent to its amendment in 1959, there is a 1959 opinion of the Attorney General of Illinois interpreting this provision. (1959 Ill. Att'y. Gen. Op. 162.) That opinion involved a salvage company which was attempting to sell 803 cases of beer. The Illinois Liquor Control Commission objected to the sale because the salvage company had not complied with section 126 in that it had not registered the trademark or brand name of the merchandise it intended to sell, or the name of the persons to whom it

intended to sell the beer, nor did it fix any geographical area in which it had granted the right to sell the beer at wholesale.

The Attorney General found that the commission's interpretation of the statute was erroneous. He pointed out that the salvage company did not own or control the brand name, and, therefore, it was not required to register with the commission. He concluded that section 126 did not preclude the sale of the beer.

The defendants' allegations that our construction of section 126 will seriously hinder the commission's ability to comprehensively monitor liquor distribution and will destroy the effectiveness of the franchise system are indeed serious. If these allegations are correct, it is the responsibility of the legislature to amend the statute. The judiciary has the responsibility to interpret a statute but does not have the authority to re-write a statute.

The movant for summary judgment is entitled to judgment as a matter of law, if, based upon the pleadings, affidavits, depositions and other documents on file with the court, there exists no genuine issue as to any material fact. (Ill. Rev. Stat. 1977, ch. 110, par. 57.) In presenting their motions to the trial court, the parties agreed that the propriety of their motions turned upon the interpretation of section 126. Since we have determined that the plaintiffs' interpretation must prevail, we hold that the court erred in granting the defendants a summary judgment while denying such relief to the plaintiffs.

Our disposition of the first issue makes it unnecessary for us to consider the remaining issues the plaintiffs raise on appeal.

For the reasons stated above, we reverse the order of the Circuit Court of Cook County denying the plaintiffs' motion for summary judgment while granting the defendants' motion and remand the case for the entry of an appropriate injunctive order.

Reversed and remanded with directions.

McNAMARA and JIGANTI, JJ., concur.